IN THE SUPREME COURT OF NORTH CAROLINA

No. 23PA25

Filed 14 August 2026

SHEILA MARTIN SESSOMS, Administratrix of the ESTATE OF MATTHEW GIBSON SESSOMS

v.

TOYOTA MOTOR SALES, U.S.A., INC., TOYOTA MOTOR CORPORATION, TOYOTA MOTOR NORTH AMERICA, INC., TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC., SUBARU OF AMERICA, INC., SUBARU CORPORATION, SUBARU CORPORATION, f/k/a FUJI HEAVY INDUSTRIES, LTD., NATIONAL CAR AND TRUCK SALES LLC, J.C. SOLES, JR., in his individual capacity, JEREMY G. REGISTER, in his individual capacity, and BARRY W. GELEZINSKY, in his individual capacity.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 297 N.C. App. 395 (2024), affirming in part, reversing in part, vacating in part, and dismissing in part orders entered on 10 August 2023 and 1 December 2023 by Judge James Gregory Bell in Superior Court, Robeson County, and remanding for further proceedings. Heard in the Supreme Court on 15 April 2026.

*Ward and Smith, P.A., by Alex C. Dale, Christopher S. Edwards, Joseph T. Knott III, and Mark S. Wigley, Abrams & Abrams, P.A., by Noah B. Abrams, and Musselwhite, Musselwhite, Branch & Grantham, P.A., by William Owen, for plaintiff-appellee.*

*Jennifer K. Van Zant, Jim W. Phillips, Jr., Andrew L. Rodenbough, Graham F. Whittington, Patrick J. Cleary, and Annie C. Warren for defendant-appellants.*

*Dowling PLLC, by Troy D. Shelton, for Chamber of Commerce of the United States of America and the North Carolina Chamber Legal Institute, amici curiae.*

*Roberts & Stevens, PA, by David Hawisher, for NCADA, amicus curiae.*

*Ellis & Winters LLP, by Scottie Forbes Lee and Jacob V. Stewart, for the Product Liability Advisory Council, Inc., amicus curiae.*

EARLS, Justice.

The North Carolina Rules of Civil Procedure are intended to facilitate the "expeditious handling of factual information before trial so that the critical issues may be presented at trial unencumbered by unnecessary or specious issues." *Willis v. Duke Power Co.*, 291 N.C. 19, 34 (1976). To that end, "gamesmanship" is strongly disfavored. *See id.* Where a trial court order compels discovery consistent with these rules, and a party violates that order, the court has the discretion to impose appropriate sanctions. *E.g.*, *Dunhill Holdings, LLC v. Lindberg*, 282 N.C. App. 36, 56 (2022). Such penalties may include striking all or parts of a pleading, deeming certain acts as established for purposes of the action, or even holding the offending party in contempt of court. N.C.G.S. § 1A-1, Rule 37(b)(2) (2025). Appellate courts will not micromanage discovery matters that are entrusted to the sound discretion of the trial court, such as appropriate sanctions. *See Am. Tel. & Tel. Co. v. Griffin*, 39 N.C. App. 721, 727 (1979).

Here, we review a discovery order that ultimately gave rise to serious sanctions. Toyota Motor Sales, U.S.A., Inc. (Toyota) and Subaru Corporation (Subaru)

are two defendants in a negligence, unfair and deceptive trade practices, and product liability suit brought by Ms. Sheila Sessoms. Ms. Sessoms represents the estate of her son, Matthew Gibson Sessoms, who was tragically killed while driving a vehicle designed, manufactured, sold, and distributed by Toyota and Subaru. After the trial court found that Toyota and Subaru were willfully failing to comply with their obligations under the Rules of Civil Procedure and with the trial court's earlier discovery order, the trial court sanctioned them by eliminating one of their defenses to the action and deeming two elements of Ms. Sessoms's product liability claim as established.

Below, the Court of Appeals vacated the sanctions order and reversed part of the discovery order. *See Sessoms v. Toyota Motor Sales, U.S.A., Inc.*, 297 N.C. App. 395, 399 (2024) (per curiam). The Court of Appeals held that the trial court erred by ordering Toyota and Subaru to translate documents they had already produced from the Japanese language into the English language, where defendants only ever possessed the documents in the Japanese language and would therefore have to create costly English translations to comply with the order. *Id.* We declined to allow review of this issue and it is not before us at this time.

On discretionary review of the remaining issues in the discovery order, we conclude that the trial court committed two other legal errors. First, the trial court erred by enforcing a fourteen-day deadline for objections to document requests in a deposition notice pursuant to Rule 30(b)(5). This Rule plainly states that such

objections "must be served at least seven days prior to the taking of the deposition." N.C.G.S. § 1A-1, Rule 30(b)(5) (2025). Although parties can mutually agree to a different deadline, including in a discovery plan, and a court can order documents produced consistent with the Rules, a party seeking discovery may not unilaterally compel an adverse party to act in advance of the 30(b)(5) deadlines. Second, the trial court erred by waiving Toyota and Subaru's objections to the Rule 30(b)(6) deposition topics simply because they did not obtain a protective order prior to the respective depositions. We hold that a deponent who seeks to object to Rule 30(b)(6) deposition topics need not obtain a protective order to preserve those objections. Rather, the objections are preserved when the party from whom discovery is sought lodges them directly with the party seeking discovery, in advance of the deposition.

Because the trial court's discovery order contained two other legal errors, the Court of Appeals erred by affirming those parts of the order. We reverse that part of the Court of Appeals decision, remand this matter to the Court of Appeals with instructions to vacate the discovery order, and further remand the matter to the trial court for further proceedings consistent with this opinion.

## I. Background

### A. The Car Crash and Complaint

Ms. Sessoms's eighteen-year-old son Matthew was driving a 2013 Toyota Scion on 12 July 2021 in Columbus County when, around 11:30 a.m., a state-owned dump truck ran a stop sign and collided with the front of his vehicle. As the complaint

alleges, the occupant compartment collapsed and effectively pinned Mr. Sessoms to the steering wheel while he was alive and conscious. Then, while he was trapped, his car caught fire near the engine compartment. Bystanders and emergency rescue services were unable to extinguish the growing flames and unsuccessfully tried for over an hour to rescue Mr. Sessoms from the burning car. The complaint alleged that "the firewall between the engine compartment and the occupant structure failed, and fire began spreading from the footwell of the driver's side of the vehicle to Mr. Sessoms's" person, causing severe pain and injury and eventually his death.

As the administratrix of Matthew's estate, Ms. Sessoms brought her first amended complaint on 10 January 2022 naming Toyota and Subaru, joint developers of the Scion, as defendants.[1] Her new complaint alleged (1) negligence, gross negligence, recklessness, and willful and wanton misconduct, specifically related to the vehicle design; (2) breach of express and implied warranties; and (3) Chapter 75 violations under North Carolina's Unfair and Deceptive Trade Practices Act.

**B. Claims in Discovery**

The claims proceeded to discovery. The parties entered a Hague service agreement on 23 February 2022 to extend deadlines for various discovery matters not at issue here. They also entered into a Stipulated Sharing Protective Order, which the trial court approved on 8 August 2022. No other discovery plan, such as one

---

[1] References in this opinion to "defendants" refer only to the two defendants subject to this appeal, Toyota and Subaru, and not the remaining defendants to the action.

crafted pursuant to Rule 26(f), appears in the record.

Ms. Sessoms served interrogatories, requests for production of documents, and requests for admissions on Subaru and Toyota on 26 January 2022 and 28 January 2022, respectively. Ms. Sessoms's requests focused on certain components of the vehicle, including the A-pillar, roof rails, and occupant compartment structure, as well as its firewall, engine compartment, fuel tank, fuel supply system, fuel lines, and supplemental restraint system. She sought information about employees, contractors, and suppliers who participated in the distribution of the 2013 Scion, corporate contracts related to the Scion's development and design of those component parts by each corporate entity, incidents involving those component parts in a model year 2011 Scion to present including on any previous collisions, details of particular engineers assigned to this litigation, recall history and manual or product literature for the above mentioned components, details on the sale and distribution of the Scions, and any communications related to the accident. In broad strokes, these requests sought information about Toyota and Subaru's likely defenses, their respective roles in the Scion's manufacture and design, the process of design and manufacture for this vehicle model and subsequent Scions, communications related to defendants' own investigation into the crash, and any notice Toyota and Subaru had about the Scion's safety issues. Toyota and Subaru answered on 3 March 2022 and 25 April 2022, responded on 12 May 2022 and 27 June 2022, and submitted supplemental responses on 27 July 2022 and 12 January 2023, respectively.

In the spring of 2023, Ms. Sessoms noticed depositions of Toyota and Subaru as corporate entities pursuant to Rule 30(b)(6). Ms. Sessoms's 18 April 2023 notice to Toyota contained a request for document production pursuant to Rule 30(b)(5), as did Ms. Sessoms's 16 May 2023 notice to Subaru. On 22 May 2023, Toyota responded and objected to topics and document requests in the deposition notice. Subaru similarly responded and objected on 15 June 2023. Nonetheless, Toyota's designee Barry Hare was deposed on 1 June 2023 and Subaru's designee Tetsuya Nakase was deposed on 22 June 2023. Ms. Sessoms's counsel held both depositions open pending her forthcoming motion to compel.

## C. The Discovery Order

Following both depositions, Ms. Sessoms moved the trial court on 6 July 2023 to compel discovery against Toyota and Subaru. Among many issues, she argued that defendants did not timely respond to the Rule 30(b)(5) document requests within the fourteen-day period contained in the request, so their objections should be "waived" and "stricken" by the trial court and the trial court should order those documents produced. Further, she argued that defendants' responses to the Rule 30(b)(6) deposition topics contained "improper unilateral limitations of the deposition topics" and other improper objections and that defendants had not obtained a protective order prior to the deposition. She asked that the trial court overrule those objections and compel the designees to be "prepared to testify as to the topics contained in Plaintiff's Rule 30(b)(6) Notices to the Subaru and Toyota Defendants" at the

reconvened deposition. She also sought the production of additional documents, including English language translations of documents already produced in Japanese. Ms. Sessoms's motion confirmed that the parties tried to meet and confer, but that "[t]hese efforts were unavailing." Toyota and Subaru opposed the motion, arguing that their responses were complete, consistent with the Rules of Civil Procedure, and that Ms. Sessoms's requests were otherwise not sufficiently detailed for them to respond further. They pointed to correspondence from defense counsel to plaintiff's counsel offering to meet and requesting "additional, specific information regarding the additional documents you seek."

The trial court heard Ms. Sessoms's motion on 7 August 2023 with counsel for the parties present. On 10 August 2023, the court issued an order granting her motion to compel (the discovery order). The trial court held that Toyota and Subaru had not complied with the Rules of Civil Procedure and had not produced adequately prepared designees for the Rule 30(b)(6) depositions. The court ordered Toyota and Subaru to supplement their responses to certain interrogatories and requests for production, including with new documents translated into the English language, and to make a log of responsive documents Toyota and Subaru were claiming were "not within their possession or control" or were otherwise privileged—in particular, documents which Subaru's designee specifically referenced during his Rule 30(b)(6) deposition but that were not produced. The trial court also ordered Toyota and Subaru to designate a witness prepared to testify as to all matters known or

reasonably available to the respective defendants for the topics listed in Ms. Sessoms's Rule 30(b)(6) notice "without further objection" and that the depositions would reconvene locally, in Robeson County.

## D. The Sanctions Order

On 11 September 2023, Toyota and Subaru submitted supplemental responses to plaintiff's first set of interrogatories, requests for production, and requests for admission. Counsel exchanged letters on 13 September and 18 September as to the scope of defendants' obligations under the discovery order, and specifically the nonproduction of certain documents in English and documents that representatives for Toyota and Subaru claimed could not be found. Counsel for Ms. Sessoms warned that she would file another motion to compel and for sanctions should the issues not be resolved.

On 19 September 2023, Ms. Sessoms moved for sanctions and made a second motion to compel. She argued that Toyota and Subaru's responses to her discovery requests were incomplete and contained improper objections and refusals to substantively answer, that other attempts to resolve the issues without judicial intervention were unsuccessful, and that she was "unable to effectively prosecute her claims without" the materials being withheld. She emphasized that nearly all of Subaru's documents were in the Japanese language and had not been translated according to the trial court's discovery order. Subaru and Toyota opposed the motion to compel and for sanctions on 25 October 2023, arguing that they had complied with

the Rules of Civil Procedure and that to the extent there were "potentially responsive documents . . . no longer available," that was due to "the operation of routine, good-faith document retention policies."

The trial court heard Ms. Sessoms's new motion on 27 November 2023 with counsel present. On 1 December 2023, the trial court granted Ms. Sessoms's motion by written order (the sanctions order). The court reiterated the discovery order's conclusions that Toyota and Subaru had "willfully failed to comply with [their] obligations under Rule 30(b)(6)," and that neither had "served timely objections to the document requests contained in the Rule 30(b)(6) notices." The court again observed that "[n]either [defendant] filed motions for protective orders to limit the scope of the deposition or the accompanying document requests prior to the taking of the Rule 30(b)(6) depositions."

The court further ruled that defendants' 10 September 2023 responses were past due, incomplete, and missing the required privilege log, and that a range of responsive documents that the discovery order compelled be produced were either not produced in English or not produced at all. The trial court further observed that Toyota and Subaru had not adequately explained why documents related to the Scion's development and design were not produced, notwithstanding the proffered document retention policy, because Toyota and Subaru "have not shown the [c]ourt that they, in fact, complied with their own policy." This failure, the trial court reasoned, suggested that relevant and discoverable documents were being

"with[e]ld[ ]" or had even been "potential[ly] destr[oyed]."

Relying on what the court characterized as Toyota and Subaru's repeated and intentional noncompliance with the Rules of Civil Procedure and the discovery order, the trial court held that Toyota and Subaru's conduct merited sanctions under Rule 37(b). The trial court proceeded to sanction defendants by deeming certain facts as established against Toyota and Subaru. In brief, the established facts proved the elements of duty and breach in Ms. Sessoms's product liability claim in her favor, based on the defective design of the side structure, engine compartment, and firewall and the existence of a feasible alternative design. Moreover, the trial court struck Toyota and Subaru's defense that the Scion was designed in compliance with applicable government regulations and therefore was not defective. The court reiterated that Toyota and Subaru remained bound by the discovery order and instructed that the court would hold a status conference in sixty days to determine Toyota and Subaru's compliance with both orders and consider then "whether additional sanctions are just and appropriate."

**E. The Appeal**

Toyota and Subaru appealed both the discovery order and the sanctions order, relying on Court of Appeals precedent that a sanctions order affects a substantial right and should be appealed with the underlying discovery order. *See Benfield v. Benfield*, 89 N.C. App. 415, 418–19 (1988); *Feeassco, LLC v. Steel Network, Inc.*, 264 N.C. App. 327, 331–32 (2019); *Willis*, 291 N.C. at 30; *Baker v. Speedway Motorsports,*

*Inc.*, 173 N.C. App. 254, 262 (2005). They also petitioned for writ of certiorari in the alternative to ensure the Court of Appeals could fully review both orders, arguing that "[t]he [d]iscovery [o]rder involves issues and facts inextricably intertwined with those addressed in the [s]anctions [o]rder."

On review, the Court of Appeals dismissed Toyota and Subaru's appeal as to the location of the reconvened Rule 30(b)(6) deposition, reasoning that this issue did not raise a substantial right. *See Sessoms*, 297 N.C. App. at 398. Otherwise, the Court of Appeals retained the appeal and, to the extent that other issues in the appealed orders did not affect a substantial right, in its discretion granted certiorari. *Id.*

On the merits, the Court of Appeals concluded that "the trial court did not abuse its discretion [or] commit reversible error, or the Toyota Defendants have otherwise waived any argument by not timely objecting *except that* we conclude the trial court erred by requiring [Toyota and Subaru] to create new documents in English of documents already provided that are in the Japanese language." *Id.* The court followed "the greater weight of authority in the United States that a party producing documents is not required to create new documents consisting of English translations of documents already provided." *Id.* at 399. The court reversed that portion of the discovery order but otherwise affirmed that order. *Id.* As to the sanctions order, the Court of Appeals vacated and remanded for the trial court to reconsider whether, in the trial court's discretion, the same sanctions were merited and whether the sanctions to be imposed mooted any of the remaining discovery

disputes. *Id.*

Toyota and Subaru petitioned this Court for discretionary review, which we allowed on 12 December 2025. We denied Ms. Sessoms's conditional petition for discretionary review of whether the Court of Appeals wrongly vacated the sanctions order on the English translation issue.

## II. Discovery Issues

### A. Standard of Review

The Rules of Civil Procedure are part of the General Statutes, so interpreting their meaning is a matter of statutory interpretation. *In re E.D.H.*, 381 N.C. 395, 398 (2022). Statutory interpretation questions are reviewed de novo. *Id.* Otherwise, "[t]he administration of these rules lies necessarily within the province of the trial courts," *Am. Tel. & Tel. Co.*, 39 N.C. App. at 727, and an appellate court reviews a trial court's discovery rulings for abuse of discretion, *e.g.*, *Fulmore v. Howell*, 189 N.C. App. 93, 94 (2008) (reviewing a trial court's order granting a motion to compel for abuse of discretion); *Hartman v. Hartman*, 82 N.C. App. 167, 180 (1986) (reviewing a protective order under Rule 26(c) for abuse of discretion). An abuse of discretion may occur where the trial court commits an error of law by misinterpreting and misapplying the relevant legal standard, *Da Silva v. WakeMed*, 375 N.C. 1, 5 (2020), or where an appellant shows that the court's ruling was "manifestly unsupported by reason[ ] or could not be the product of a reasoned decision," *Fulmore*, 189 N.C. App. at 96 (quoting *Nationwide Mut. Fire Ins. Co. v. Bourlon*, 172 N.C. App. 595, 601

(2005)).

Discovery orders not certified under Rule 54(b) are interlocutory and not immediately appealable unless they affect a substantial right. *E.g.*, *Baker*, 173 N.C. App. at 262. But a discovery order enforced by sanctions under Rule 37(b) may be appealable. *E.g.*, *Willis*, 291 N.C. at 29 ("Appeal from an adjudication of criminal contempt is a recognized means of obtaining immediate review to test discovery orders." (cleaned up)); *Feeassco, LLC*, 264 N.C. App. at 331–32 (noting that "a party may appeal from an [interlocutory] order imposing sanctions by striking its answer and entering judgment as to liability" and that "[t]he appeal tests the validity of both the discovery order and the sanctions imposed").

Here, Toyota and Subaru appealed both the discovery order and the sanctions order to the Court of Appeals, but our review is limited only to the discovery order. The Court of Appeals in its discretion allowed certiorari to review issues in the discovery order, even if they did not affect a substantial right. *Sessoms*, 297 N.C. App. at 398. The Court of Appeals also vacated the sanctions order, and we did not allow review of that decision. Thus the validity of the sanctions order is not before us and that order remains "null and void." *Alford v. Shaw*, 327 N.C. 526, 543 n.6 (1990). We also denied review of the Court of Appeals' decision that the Rules of Civil Procedure do not permit a court to order an adverse party to translate documents into the English language where those documents did not already exist in English, so that issue is not before us, either. Our review is thus limited to the remaining issues in

the discovery order. *See* N.C. R. App. P. 16(a) ("Review by the Supreme Court is limited to consideration of the issues stated in . . . the petition for discretionary review . . . unless further limited by the Supreme Court . . . ."); *Cherry Cmty. Org. v. Sellars*, 381 N.C. 239, 256 (2022) (noting that, on discretionary review, "our review is limited to consideration of the issues stated in the petition for discretionary review and the response thereto and properly presented in the new briefs" (cleaned up)).

**B. Rule 30(b)(5) Request for Production Deadlines**

Ms. Sessoms's Rule 30(b)(6) deposition notices to Toyota and Subaru also included a request that documents be produced pursuant to Rule 30(b)(5). That Rule permits a deposing party to include "a request made in compliance with Rule 34 for the production of documents and tangible things at the taking of the deposition." N.C.G.S. § 1A-1, Rule 30(b)(5) (2025). In both notices, Ms. Sessoms requested that documents be produced fourteen days before the scheduled deposition.

Toyota and Subaru responded and objected not fourteen days prior to the scheduled deposition, as Ms. Sessoms requested, but rather ten days and seven days before the taking of the deposition, respectively.

In the discovery order, the trial court held that Toyota and Subaru's responses to these Rule 30(b)(5) document requests "did not comply with the North Carolina Rules of Civil Procedure" and ordered both defendants to produce documents within thirty days "without further objection." The sanctions order elaborated that, in the trial court's view, "[n]either [Toyota] [n]or [Subaru] served timely objections to the

document requests contained in the Rule 30(b)(6) notices," and that the discovery order "overrul[ed Toyota and Subaru's] objections[ ] and order[ed] full and complete supplementation." The Court of Appeals affirmed this decision without particular reasoning. *Sessoms*, 297 N.C. App. at 398. This was legal error.

Rule 30(b)(5) states that notices made pursuant to that provision shall follow "the procedure of Rule 34, except as to the time for response." N.C.G.S. § 1A-1, Rule 30(b)(5). The provision separately provides the time for response: "[T]he notice and the request must be served at least 15 days earlier than would otherwise be required by Rule 30(b)(1), and any objections to such a request must be served at least seven days prior to the taking of the deposition." *Id.* The documents themselves are due "at the taking of the deposition." *Id.*

Here, no one disputes that Toyota and Subaru served their objections "at least seven days prior" to the deposition. *Id.* Thus the objections were served within the deadlines prescribed by the Rules of Civil Procedure and could not be waived as untimely on this basis. Although Ms. Sessoms requested the objections and responsive documents sooner than the timelines provided for in the Rules, one party may not unilaterally impose tighter deadlines on their adverse party than those prescribed by the Rules and expose the other party to sanctions on that basis. *See* N.C.G.S. § 1A-1, Rule 1 (2025) ("These rules shall govern the procedure in the superior and district courts of the State of North Carolina in all actions and proceedings of a civil nature except when a differing procedure is prescribed by

statute."). The Rules do not forbid parties from negotiating and mutually agreeing to different deadlines, of course, but that is not what happened here.

Misstating a deadline is not necessarily a legal error giving rise to abuse of discretion. Trial courts and trial advocates are busy and mistakes happen. Oftentimes, such mistakes may be harmless. In general, orders to compel and orders for sanctions are intended to address "a violation of a substantive rule of discovery." *E.g.*, *Myers v. Myers*, 269 N.C. App. 237, 252 (2020). But here, it appears that the deadline mistake did have a prejudicial and significant effect. Namely the parties agree that Ms. Sessoms's Rule 30(b)(5) document requests largely restated her earlier requests for production. So waiving defendants' objections to the Rule 30(b)(5) requests effectively waived the other outstanding objections to all of Ms. Sessoms's previous requests for production under Rule 34. A misstatement of the deadline thus improperly waived both the objections to the Rule 30(b)(5) notice and to the other Rule 34 requests. Getting the deadline wrong was thus harmful under these circumstances. Such an error of law constitutes an abuse of discretion. *See Da Silva*, 375 N.C. at 5.

## C. Objections to Rule 30(b)(6) Deposition Topics

On 18 April and 16 May 2023, Ms. Sessoms served Toyota and Subaru respectively with a notice of deposition pursuant to Rule 30(b)(6). The parties subsequently disputed the appropriate scope of topics Ms. Sessoms identified in her notices as well as the preparedness of Toyota and Subaru's designees to testify to both

the objected and non-objected to topics.

In particular, each Rule 30(b)(6) notice contained twenty-five topics Ms. Sessoms proposed to cover in the deposition. Those notices were served forty-four and thirty-seven days before Toyota and Subaru's depositions, respectively.

Toyota and Subaru ultimately objected to all twenty-five topics. Those objections were served at the same time as defendants' responses to the Rule 30(b)(5) document requests, ten days and seven days before the taking of the deposition, respectively. *See supra* Section II.B.

Their objections indicated that Toyota and Subaru refused to produce a witness capable of testifying to some topics. For example, they declined to produce a witness who could explain previous instances when that designee has testified under oath. For other topics, though, defendants objected only in part and further indicated that a witness would be produced who could testify to part of the topic. For example, one of Ms. Sessoms's noticed topics asked that the corporate designee be prepared to testify to communications between Toyota and "any governmental agency related to any customer complaints, warranty claims, or legal claims related to the fuel supply system in other Toyota vehicles with the same or similar A-Pillar, roof rail, brake fluid reservoir, occupant compartment, firewall, engine compartment, fuel tank, fuel line, and/or components and/or any other components thereof." Toyota objected and stated it would produce a witness who would testify on these topics in part. Specifically, Toyota indicated it would produce a witness who would testify "generally

about communications between Toyota and NHTSA [the National Highway Traffic Safety Administration] pertaining to recalls or NHTSA investigations, if any, involving the roof structure, occupant compartment structure, bulkhead between engine compartment and occupant compartment, doors and door frames, or fuel delivery system applicable to the 2013-2016MY U.S. bound Scion FR-S." Its witness would also testify as to certain notices received through Toyota's "Brand Engagement Center" about alleged defects in "2013-2016MY U.S. bound Scion FR-S" related to "the vehicle's roof structure, occupant compartment structure, bulkhead between engine compartment and occupant compartment, doors and door frames, or fuel delivery system." But Toyota objected to producing a witness who could provide the same information related to "other Toyota vehicles," alleging that this request was overly broad. Toyota also objected to its designee offering information about claims related to alleged defects with the Scion but that "have nothing to do with Plaintiff's claims in this case" where the driver was killed following a post-collision fire. It further objected to providing information about the names and addresses of other claimants on the grounds of the "right of privacy," citing a federal district court case from another jurisdiction. Subaru's objections followed similar patterns. For example, Subaru also objected to its designee discussing vehicle models outside the 2013 to 2016 U.S.-bound Scion FR-S.

Notwithstanding these objections, the depositions proceeded ten days later for Toyota and seven days later for Subaru. After the depositions, Ms. Sessoms

-19-

challenged Toyota and Subaru's compliance with the Rules of Civil Procedure in her first motion to compel. She alleged specifically that Toyota and Subaru did not adequately educate their witnesses, that the witnesses reviewed materials not produced in discovery, and that Subaru and Toyota made improper objections and attempted to "unilateral[ly] limit[ ] . . . the deposition topics." Ms. Sessoms noted that neither Subaru nor Toyota moved for a protective order prior to the taking of the Rule 30(b)(6) depositions. Ms. Sessoms also explained that her counsel had "attempted to meet and confer in good faith to receive substantive productions pursuant to the Notice," but that "[t]hese efforts were unavailing." Ms. Sessoms's emphasized in particular that during the deposition, Subaru's designee "expressly acknowledged— for the first time in the year-long litigation—that numerous computer files, tests, test results, standards, and other documents and materials exist, but were withheld from production[,] . . . includ[ing] tests and standards that [Subaru]'s designee testified about—for the first time—in answering leading questioning by counsel for Subaru and Toyota."

At the hearing on Ms. Sessoms's first motion to compel, her counsel argued that Subaru and Toyota should have either moved to quash the Rule 30(b)(6) motion or else moved for a protective order prior to the taking of the deposition so the trial court could rule on the appropriateness of the listed topics. Defendants could not, under the Rules, simply object and then produce a designee who would testify only as to defendants' chosen topics, she argued.

Although it is somewhat ambiguous from the trial court's order and the record exactly how this dispute was resolved, it appears the trial court at least in part accepted Ms. Sessoms's interpretation of the Rules and sanctioned Toyota and Subaru for failing to seek a protective order prior to the taking of the deposition. The discovery order compelled Toyota and Subaru to "designate the specific individuals who are prepared to testify as to all matters known or reasonably available to the respective Defendant for the topics listed in the respective Rule 30(b)(6) depositions, without further objection." The parties construed this order as overruling or waiving Toyota and Subaru's objections to deposition topics and requiring the corporate designees to be re-deposed accordingly. The sanctions order ultimately cited Toyota and Subaru's failure to "file[ ] motions for protective orders to limit the scope of the deposition or the accompanying document requests prior to the taking of the Rule 30(b)(6) depositions" and reiterated that the discovery order "overrul[ed] the subject Defendants' objections."

On appeal, the Court of Appeals affirmed the discovery order without analysis of this issue specifically. *Sessoms*, 297 N.C. App. at 398.

We hold that, to the extent the trial court waived or overruled Toyota and Subaru's objections to the Rule 30(b)(6) deposition topics because they failed to seek a protective order to limit the scope of Rule 30(b)(6) deposition topics prior to the taking of the deposition, this was legal error. The Rules of Civil Procedure do not require a deponent to a Rule 30(b)(6) deposition notice to seek or obtain a protective

order prior to the taking of a deposition to preserve their objections to the noticed topics. Objections are preserved by lodging them directly with the noticing party in advance of the scheduled deposition. The Court of Appeals likewise erred by affirming this part of the discovery order.

A Rule 30(b)(6) deposition is a distinctive type of deposition. *See* N.C.G.S. § 1A-1, Rule 30(b)(6) (2025). Unlike an ordinary deposition, where a party seeking discovery takes an oral examination of a specified person, *see id.* at Rule 30(b)(1), a deposition under Rule 30(b)(6) enables a party to depose a business, corporation, or organization itself, *id.* at Rule 30(b)(6). This provision articulates particular procedures that apply. In general, the deposing party notices the deposition as against the organization by name and identifies "with reasonable particularity the matters on which examination is requested." *Id.* Then, the deponent organization picks a witness or witnesses to testify on its behalf. "The persons so designated shall testify as to matters known or reasonably available to the organization." *Id.* As the comment explains, this provision was designed to "curb the 'bandying' by which officers or managing agents of a corporation are deposed in turn but each disclaims knowledge of facts that are clearly known to persons in the organization and thereby to it," while mitigating the burden to "organizations which find that an unnecessarily large number of their officers and agents are being deposed by a party uncertain of who in the organization has knowledge." *Id.* at cmt. to 1975 Amendment.

By its plain language, Rule 30(b)(6) imposes "concomitant responsibilit[ies]" on

both the deposing party and the deponent organization. *E.g.*, *Newman v. Borders, Inc.*, 257 F.R.D. 1, 3 (D.D.C. 2009) (noting that the deposing party must clearly identify the topics for the deposition and the organization must produce a witness "who can speak knowingly as to the topic" even if that person must be "educate[d]" so they can do so). The noticing party must be reasonably clear about the topics to be covered, and the deponent organization must adequately prepare its designees to speak to the identified topics. *Accord* 8A *Wright & Miller's Federal Practice and Procedure* § 2103 (3d ed. 2010) (noting that materially identical language in the federal rules creates "an implicit obligation to prepare the witness"). Rule 30(b)(6)'s structure thus implies parties may have to confer after receiving the notice and prior to the taking of the deposition to be aligned on the deposition's focus and to meet their mutual obligations. The existence of mutual obligations also signals that one party may have concerns based on how they perceive the adverse party meeting (or not meeting) their own obligations—thus implicitly contemplating the prospect of objections.

Of course, even designees endeavoring to be adequately prepared may not exactly anticipate all questions that might be asked pursuant to "reasonably particular" topics. Topics are, by definition, not exact questions. *See, e.g.*, *Topic*, *Webster's Third New International Dictionary* 2410 (2002) (defining a topic as "[a] subject under discussion or consideration" or "a phrase summarizing what is to be presented in a discourse or a section of it"). Rule 30(b)(6)'s use of the word "topics"

thus counsels against penalizing a deponent for failing to exactly anticipate and prepare for every single question asked, where the organizational deponent otherwise operated reasonably and in good faith to understand the topics, anticipate the questions, and educate its designee accordingly.

Ms. Sessoms argues that a protective order is required for a deponent organization to limit the scope of Rule 30(b)(6) deposition topics, pointing specifically to Rule 37(d). That provision mandates that a party must apply for a protective order where a party "fail[s] . . . to appear before the person who is to take the deposition, after being served with a proper notice." N.C.G.S. § 1A-1, Rule 37(d) (2025). But the comment to this Rule clarifies that it applies in cases of "total noncompliance." *See id.* at cmt. to 1975 Amendment. This provision prohibits a party from "remain[ing] completely silent even when he regards a notice to take his deposition . . . as improper and objectionable," and makes clear that, if a deponent "desires not to appear or not to respond, he must apply for a protective order." *Id.* The circumstances here are different—it was not that Toyota and Subaru refused to appear at all, but rather that they disputed the appropriate scope of the topics over which Ms. Sessoms sought to depose them in advance of the deposition and otherwise intended to, and did, sit for the noticed deposition.

Instead, Toyota and Subaru and several amici argue that the circumstances here, where a party from whom discovery is sought objects to Rule 30(b)(6) deposition topics including because they are overbroad or "not reasonably particular" or

otherwise not discoverable, is most akin to a "failure to designate" under Rule 37(a)(2). Rule 37(a) instructs that a party seeking discovery may use a motion to compel where "a deponent fails to answer a question propounded or submitted under Rules 30 or 31[ ] or a corporation or other entity fails to make a designation." *Id.* at Rule 37(a). This is a sword, of sorts, for the party seeking discovery to put a dispute directly before the trial court.

We find this reasoning persuasive. Treating objections to Rule 30(b)(6) deposition topics as a "failure to designate" comports with the provision's ordinary meaning. *See Wilkie v. City of Boiling Spring Lakes*, 370 N.C. 540, 550 (2018) ("Usually, words of a statute will be given their natural, approved and recognized meaning." (quoting *Black v. Littlejohn*, 312 N.C. 626, 638 (1985))). An objection to a Rule 30(b)(6) discovery topic is effectively a refusal to produce a witness to testify to that topic, or a failure to make a designation for that topic. By contrast, it would be quite unusual to state that a witness "fail[ed] . . . to appear before the person who is to take the deposition, after being served with a proper notice," when the witness did in fact show up but objected in advance to testifying to certain noticed topics. *Compare* N.C.G.S. § 1A-1, Rule 37(a)(2) *with id.* at Rule 37(d).

Rule 37(a)(2)'s enforcement mechanism also supports that disputes over the scope of topics in a Rule 30(b)(6) deposition can be resolved on the motion of the party seeking discovery. Specifically, if the trial court denies the motion to compel for "failure to make a designation," the court is empowered to issue a protective order

under Rule 26(c) as if the non-moving party had earlier obtained one. *See id.* at Rule 37(a)(2) ("If the court denies the motion [to compel] in whole or in part, it may make such protective order as it would have been empowered to make on a motion made pursuant to Rule 26(c)."). If the nonmoving party were always required to obtain a protective order in the first instance as Ms. Sessoms argues, this clause would seemingly serve little purpose. Its existence thus serves as another textual indication that a protective order is not necessarily required to preserve such objections. *See State v. Conley*, 374 N.C. 209, 215 (2020) ("It is presumed that the legislature did not intend any provision to be mere surplusage." (cleaned up)).

Our holding here should not be construed as limiting any party's ability to bring disputes over Rule 30(b)(6) deposition topics to the trial court's attention. A motion for a protective order under Rule 26(c) remains another mechanism to put a discovery dispute to a trial court. It is effectively a shield for a party or "person from whom discovery is sought," and it protects a range of interests, from "unreasonable annoyance, embarrassment, oppression, or undue burden or expense" to improper disclosure of "trade secret[s] or other confidential research, development, or commercial information." N.C.G.S. § 1A-1, Rule 26(c) (2025). Similar to Rule 37(a)(2), Rule 26(c) permits a trial court to "order that any party or person provide or permit discovery" when denying "in whole or in part" a motion for a protective order. *Id.* So disputes that could have been resolved through a motion to compel can similarly be raised by a person from whom discovery is sought should they choose to do so. We

hold simply that that a deponent who seeks to object to Rule 30(b)(6) deposition topics need not obtain a protective order prior to the taking of the deposition to preserve those objections.[2]

To be clear, though, in order for a party seeking discovery to have a meaningful opportunity to enforce their rights under Rule 37(a)(2), which includes certifying that the movant has attempted to meet and confer to resolve the dispute without judicial intervention, a deposing party must have sufficient notice of the Rule 30(b)(6) deponent's objections in advance of the deposition. We agree with federal court interpretations of the Federal Rules of Civil Procedure (interpreting analogous language before the 2020 rule change) that objections to Rule 30(b)(6) depositions must be made promptly to the deposing party after service of the notice. The objecting corporation "must give advance notice to the requesting party of those objections, so that the requesting party has the opportunity to reconsider its position, narrow the scope of the topic, or otherwise stand on its position and seek to compel additional

---

[2] Notably, too, both Rule 26(c) and Rule 37(d) provide for the possibility of attorney fee shifting for a successful movant. *See* N.C.G.S. § 1A-1, Rule 37(a)(4) (2025) ("If the motion is granted, the court shall, after opportunity for hearing, require the party or deponent whose conduct necessitated the motion or the party advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney's fees, unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust."); *id.* at Rule 26(c) ("The provisions of Rule 37(a)(4) apply to the award of expenses incurred in relation to the motion."). That possibility is limited by exceptions where the trial court finds the other party was "substantially justified" in opposing the motion "or that other circumstances make an award of expenses unjust." *See id.* at Rule 37(a)(4). These provisions should continue incentivizing parties to resolve disputes prior to a deposition when possible and without judicial intervention; and should disincentivize gamesmanship that would improperly shift the routine costs of discovery to parties acting reasonably and in good faith.

answers." *Kartagener v. Carnival Corp.*, 380 F. Supp. 3d 1290, 1296 (S.D. Fla. 2019); *accord Wright & Miller* § 2103 (3d ed. Supp. 2026) (same); *see also* F. R. Civ. P. 30(b)(6) (directing parties to "confer in good faith about the matters for examination" following an amendment in 2020). A party objecting to deposition topics in a Rule 30(b)(6) notice preserves those objections by serving them directly on the deposing party in advance of the deposition. Raising objections to deposition topics for the first time during the taking of a deposition or on its eve would suggest a corporate entity has fallen short of its obligations to adequately prepare its designees as to the noticed topics.[3]

Contrary to the trial court, then, we do not interpret the Rules of Civil Procedure to require a deposing party to preserve objections to Rule 30(b)(6) deposition topics by seeking a protective order. Here, Toyota and Subaru preserved their objections to the Rule 30(b)(6) topics by serving those directly on Ms. Sessoms in advance of the noticed deposition. Waiving or overruling their objections to those topics solely for failure to obtain a protective order prior to the taking of the deposition amounted to legal error.

\* \* \*

---

[3] As with the Federal Rules of Civil Procedure, the North Carolina Rules of Civil Procedure do not state a particular deadline by which objections to Rule 30(b)(6) deposition topics must be made to be preserved. Even so, parties can certainly agree to specified deadlines, or they may be imposed upon order of a court in a discovery plan. *See* N.C.G.S. § 1A-1, Rule 29 (2025) (entitled "Stipulations regarding discovery procedure"); *id.* at Rule 26(f) (entitled "Discovery meeting, discovery conference, discovery plan").

In summary, the Court of Appeals held that the trial court's discovery order improperly compelled Toyota and Subaru to produce English language translations of documents the defendants' only ever possessed in the Japanese language. We now hold that the trial court improperly waived objections to Rule 30(b)(5) document requests and 30(b)(6) deposition topics based on a misapplication and misinterpretation of the Rules of Civil Procedure. In light of the central role of these holdings in the discovery order and subsequent proceedings, we vacate the trial court's order and remand for further proceedings consistent with this opinion. *See In re A.J.L.H.*, 384 N.C. 45, 57 (2023) (noting that, when a trial court rules improperly on a matter entrusted to its discretion, vacating the order is the appropriate remedy by a reviewing court).

**D. Other Issues Raised**

Toyota and Subaru brought two other challenges to the discovery order on appeal.[4] The first was that the trial court's order that Toyota and Subaru supplement their responses to Ms. Sessoms's requests for production of documents and interrogatories was impermissibly vague and gave defendants "no information to assess how their initial discovery responses were inadequate." The second was that the trial court's discovery order imposed "impossible" discovery tasks such as making

---

[4] Toyota and Subaru also challenged the trial court's determination that defendants "had withheld, or otherwise failed to produce, and potentially destroyed responsive documents." This determination appears in the sanctions order, not the discovery order, however, and thus is not presented for our review. *See supra* Section I.E.

a log of documents that "do not exist in the possession of [Toyota or Subaru]."

As to the order to supplement, we note that parties on both sides have advanced arguments to our Court that were not made to the trial court and that the trial court ought to consider in the first instance on remand. For example, Ms. Sessoms precisely explained her view that Toyota and Subaru over-produced design and testing files for the 2013 Scion model but produced no design or testing files indicating changes in the model between 2013 and 2014—evidence which goes to Ms. Sessoms's product liability theory of alternative feasible design. Oral Argument at 30:29, *Sessoms v. Toyota Motor Sales, U.S.A., Inc.*, No. 23PA25 (N.C. Aug. 14, 2026), www.youtube.com/watch?v=9l8c6IoL1Oc. She cites publicly available information indicating that the 2014 model had been upgraded to "improve occupant protection in small overlap frontal crashes" including with "a structural change adjacent to the left part of the firewall" where Mr. Sessoms's older Scion was hit and argues that subsequent design changes through 2016 are also probative. (Quoting Insurance Institute for Highway Safety, *2014 Scion FR-S*, https://www.iihs.org/ratings/vehicle/Scion/fr-s-2-door-hatchback/2014 (last visited Aug. 11, 2026).) For their part, Toyota and Subaru advance new arguments for why their proffered document retention policies explain the corporations' retention of some of the design files they produced but not others. In general, litigants may not raise and argue new issues for the first time in an appellate court. *See Weil v. Herring*, 207 N.C. 6, 10 (1934). Further, these are the type of fact-specific discovery issues that

parties ought to try to resolve via meet and confer and, should those efforts prove unsuccessful, are appropriately resolved by the trial court in the first instance. *Cf. Am. Tel. & Tel. Co.*, 39 N.C. App. at 727 (noting that routine administration of discovery rules "lies necessarily within the province of the trial court").[5]

Finally, as to the trial court's order that Toyota and Subaru make a log of documents that both claim are no longer in their possession, we clarify only that we do not agree with defendants' position that the trial court has ordered them to complete an "impossible task." The record shows that Subaru's own designee referenced testing and design files that existed and were material to Ms. Sessoms's claims, including because defendants intended to rely on them in their defense to the action, but that were not produced in discovery. In leading questions by Subaru's own counsel, the designee acknowledged, for example, that Subaru would have conducted testing for the Insurance Institute of Highway Safety "during . . . development" prior to sending the 2013 Scion to market and that similar submissions would have been made to European and Japanese regulators—yet copies of those tests and submissions were not produced.

Counsel for Subaru and Toyota later demurred, explaining to the trial court that, "[m]any of these documents that are being asked for are documents that are not

---

[5] We note the complexity of the factual issues in this case could make it a good candidate for designation as "exceptional." *See generally* Gen. R. Prac. Super. and Dist. Cts. 2.1. Rule 2.1 rests the decision to designate a case "exceptional" in the discretion of the Chief Justice. *See id.*

available and not in the possession and control and custody of our client." The trial court's subsequent order to log those documents mirrored counsel's explanation from the hearing and required Toyota and Subaru to make a log of documents formerly in Toyota or Subaru's custody but that they now claimed were out of their "possession or control": "To the extent that Defendants claim that a document or set of documents is not within their possession or control, Defendants shall specifically identify the document(s), the custodian of the document(s), the efforts made to obtain the document(s), and, to the extent that any document was destroyed, the date of destruction and the identity of the individual(s) who authorized the destruction of any such document(s)." It would not be an abuse of discretion for the trial court to order Toyota and Subaru to particularly explain why documents their own witness said existed are now not in their "possession or control."

## III.    Conclusion

Because the trial court's discovery order contained two legal errors which together justify vacating the order, the Court of Appeals erred by affirming those parts of the order. We reverse that part of the Court of Appeals decision and remand this matter to the Court of Appeals with instructions to vacate the discovery order and further remand the matter to the trial court for additional proceedings consistent with this opinion.

REVERSED AND REMANDED.

Justice DIETZ concurring.

The U.S. Court of Appeals for the Sixth Circuit once observed that "when a party comes to us with nine grounds for reversing the district court, that usually means there are none." *Fifth Third Mortg. Co. v. Chi. Title Ins. Co.*, 692 F.3d 507, 509 (6th Cir. 2012). This adage proved true enough that I have quoted it over the years. *See Bodie v. Bodie*, 239 N.C. App. 281, 282 (2015).

But this case teaches that the opposite can also be true. When a party correctly points out error after error in a court order, at some point it may be time to throw the whole thing out.

That is what this Court does today. By vacating the discovery order, it is a nullity. *In re K.N.*, 381 N.C. 823, 830 (2022). But the genesis of these errors was not the trial court's order; it was the breadth of plaintiff's discovery and the parties' failure to adequately meet and confer on its scope as the rule envisions. *See* N.C.G.S. § 1A-1, Rules 26(b), 37(a)(2). "Although the rule should be construed liberally neither party should be allowed to roam at will in the closets of the other." *Willis v. Duke Power Co.*, 291 N.C. 19, 34 (1976). Instead, the process is designed for parties to winnow down these types of aggressive discovery requests to get at the truly relevant material, keeping in mind that "one party's need for information must be balanced against the likelihood of an undue burden imposed upon the other." *Id.*

As questions at oral argument indicated, the parties cannot even agree on

when and how they met and conferred on these issues, much less what steps they took to work out the pending objections. That failure is how this case went adrift and correcting it will steer the case back on course. Thus, the next step for the parties is not to return to the trial court seeking another ruling on these pending motions. That would be skipping ahead.

In the spirit of the discovery process, the next step should be for the parties to genuinely meet and confer and work out a plan that resolves these disputes. *See* N.C.G.S. § 1A-1, Rule 26(f). If they cannot do so, they need to schedule a discovery conference with the trial court. *Id.* This is a complex product liability case that would be difficult for any trial judge to sort out in a single hearing on a motion to compel or motion for protective order. The comedy of errors in this case did not begin with the trial court's order; it began with the breakdown in the shared responsibilities at the heart of the discovery process. The parties need to address that issue before returning to the trial court for further motions practice.

Chief Justice NEWBY joins in this concurring opinion.

Justice RIGGS dissenting.

Ms. Sessoms has been seeking accountability for her son's death for over four years, and her day in court is as far away as ever. The traffic collision that gave rise to this lawsuit occurred in 2021, and Ms. Sessoms, as the administratrix of her son's estate, promptly filed this action in 2022. And now, in 2026, this case remains mired in the discovery phase of litigation due, in part, to the extensive interlocutory proceedings endorsed by the Court of Appeals and now by this Court.[1] The grant of certiorari by the Court of Appeals did not comply with our caselaw and, in fact, directly conflicts with cases we release on this same day. The careful use of certiorari review is a critical part of appellate practice in this state, particularly in interlocutory discovery stages of litigation. I disagree with the majority's view that certain legal errors committed by the trial court were more than harmless, and thus, I respectfully dissent.

I. **The Court of Appeals failed to apply *Cryan*, and this Court's endorsement of this interlocutory appeal will only exacerbate problems with the application of *Cryan* at the Court of Appeals.**

While the appeal of the sanctions order is understandable,[2] the appeal of the

---

[1] As in the majority, references in this dissent to "defendants" refers only to the two defendants subject to this appeal, Toyota and Subaru, and not the remaining defendants to the action.

[2] A sanctions order is immediately appealable because it affects a substantial right. *Willis v. Duke Power*, 291 N.C. 19, 30 (1976). The same is not true of a discovery order, though. *Sharpe v. Worland*, 351 N.C. 159, 163 (1999) (stating that "[a]n order compelling discovery is generally not immediately appealable because it is interlocutory").

discovery order and this Court's error correction efforts will cause more problems than they clarify. The orders are interlocutory, and it is well-settled law that "[a]s a general rule, interlocutory orders are not immediately appealable." *Turner v. Hammocks Beach Corp.*, 363 N.C. 555, 558 (2009) (citing *Davis v. Davis*, 360 N.C. 518, 524 (2006)). Interlocutory appeals are only appealable when they affect a substantial right. N.C.G.S. § 7A-27(b)(3) (2025); *see also Veazey v. City of Durham*, 231 N.C. 357, 362 (1950). When interlocutory orders do not implicate a substantial right and are not immediately appealable, our appellate courts can only review those orders where review meets the exacting standard described in *Cryan v. National Council of Young Men's Christian Associations of United States*, 384 N.C. 569 (2023). Despite that well-established rule, the Court of Appeals—without legal analysis— granted certiorari to review the discovery order and the sanctions order, stating,

> To the extent that the Toyota Defendants do not have an immediate appeal of right to review of other issues concerning the Discovery Order and the Sanctions Order, in our discretion we grant *certiorari* in the aid of our jurisdiction. *See* N.C.G.S. § 7A-32(c).

*Sessoms v. Toyota Motor Sales, U.S.A., Inc.*, 297 N.C. App. 395, 398 (2024).

## A. *Cryan* Analysis

In providing no legal analysis, failing to *even cite* to our standard for granting certiorari, as announced in *Cryan*, the Court of Appeals erred. *See State v. Martinez*, No. 101PA25, slip op. at 8 (N.C. Aug. 14, 2026) ("While certiorari is a discretionary writ, we emphasize that *Cryan*'s two-part test must be satisfied. The failure to apply

*Cryan* is an error of law that constitutes an abuse of discretion." (cleaned up)).

In the three years since the *Cryan* rule was announced, I agree with the Court's view in other cases issued today that the Court of Appeals still struggles to uniformly apply that precedent, necessitating this Court's intervention on multiple occasions. *See State v. Martinez*, No. 101PA25, slip op. at 7 n.1 (N.C. Aug. 14, 2026) (providing evidence of three different panels of the Court of Appeals applying three different standards for certiorari in published opinions issued on the same day in 2025); *State v. Gupton*, No. 444PA19, slip op. at 4 n.2 (N.C. Aug. 14, 2026) (noting the Court of Appeals' failure to apply *Cryan*). Our involvement here, in a case where the Court of Appeals already corrected the only harmful error committed by the trial court, will just exacerbate confusion about where certiorari review is appropriate.

Putting aside for the moment the failure of the Court of Appeals to apply the governing law, and looking at its application here, we must consider anew *Cryan*'s two-part test by assessing: "(1) the likelihood that the case has merit or that error was committed below and (2) whether there are extraordinary circumstances that justify issuing the writ." 384 N.C. at 570. If a party's petition satisfies *Cryan*, only then may the reviewing court, in its discretion, decide to grant or deny certiorari. *Womble v. Moncure Mill & Gin Co.*, 194 N.C. 577, 579 (1927) (stating that "[c]ertiorari is a discretionary writ" which a moving party is not entitled as a matter of right). In my review, *Cryan*'s two-part test was not satisfied and therefore the Court of Appeals

abused its discretion in granting certiorari here.[3]  While I think there is little doubt that the trial court committed some errors in its discovery and sanctions orders, not all errors need to be corrected, particularly at an interlocutory stage.  *See Dep't of Transp. v. Rowe*, 351 N.C. 172, 176 (1999) (stating that "[t]he appeals process is designed to eliminate the unnecessary delay and expense of repeated fragmentary appeals, and to present the whole case for determination in a single appeal from the final judgment") (internal citation omitted); s*ee also Perkins v. Endicott Johnson Corp.*, 128 F.2d 208, 212 (2d Cir. 1942) (noting that "only the seriously prejudicial defects [from interlocutory orders] will be dignified by appellate attention" because "many mistakes, apparently important at the time, will be seen to be trivial from the perspective of a final disposition of the case").  Our involvement now, reviewing the discovery order, certainly is not justified given that the sanctions order, which relied so heavily on the mistaken translation requirement, has been vacated.

Turning to *Cryan*'s second prong requiring a showing of extraordinary circumstances, the impact of allowing this interlocutory appeal of the discovery order not only defeats any chance defendants had of satisfying the second prong of *Cryan*, the circumstances here actually counsel *against* endorsing this invitation to piecemeal discovery appeals.  This Court has stated that this prong "generally requires a showing of substantial harm, considerable waste of judicial resources, or

---

[3] I do agree with the Court of Appeals' determination and corresponding analysis that the trial court did err by requiring defendants to create English translations of the Japanese documents provided in discovery.  *See Sessoms*, 297 N.C. App. at 398.

'wide-reaching issues of justice and liberty at stake.' " *Cryan*, 384 N.C. at 573

(quoting *Doe v. City of Charlotte*, 273 N.C. App. 10, 23 (2020)).

### B. The Impact of Allowing this Interlocutory Appeal

The general rule that "interlocutory orders are not immediately appealable"

exists for good reason. *Turner*, 363 N.C. at 558; *see* N.C.G.S. § 1A-1, Rule 54(b) (2025)

(instructing that interlocutory orders "shall not . . . be subject to review either by

appeal or otherwise except as expressly provided by these rules or other statutes").

The rationale for this general rule is widely understood:

> There is no more effective way to procrastinate the administration of justice than that of bringing cases to an appellate court piecemeal through the medium of successive appeals from intermediate orders. The rules regulating appeals from the Superior Court to the Supreme Court are designed to forestall the useless delay inseparable from unlimited fragmentary appeals, and to enable courts to perform their real function, i.e., to administer 'right and justice . . . without sale, denial, or delay.' N.C.Const. Art. I, Sec. 35.

*Veazey*, 231 N.C. at 363–64; *see also Cobbledick v. United States*, 309 U.S. 323, 325

(1940) ("To be effective, judicial administration must not be leaden-footed. Its

momentum would be arrested by permitting separate reviews of the component

elements in a unified cause."). Beyond the clear delay in the administration of justice,

appeals based on interlocutory orders can lead to other forms of harm, such as

evidence loss or degradation, memories fading, increased costs of litigation for the

parties, and the crowding of appellate calendars with litigation that ultimately

wastes judicial resources.

Defendants invited us to provide more clarity on the rules of discovery. But they issued that invitation in a case where the parties did not even negotiate a standard Rule 26(f) discovery order, a key step in promoting collaboration between the parties and avoiding the need for judicial intervention in discovery disputes. *See* Oral Argument at 4:24, *Sessoms v. Toyota Motor Sales, U.S.A., Inc.*, No. 23PA25 (N.C. Aug. 14, 2026), www.youtube.com/watch?v=9l8c6IoL1Oc. Even assuming, arguendo, that some litigants might prefer to have more caselaw from this Court addressing discovery matters, we absolutely should not provide that guidance in a case where the parties cannot even agree on a Rule 26(f) discovery order. Our involvement now would dramatically disincentivize further collaboration on discovery matters and invite any party attempting to avoid final adjudication to seek clarity, warranted or not, on every possible discovery dispute.

The majority properly acknowledges that "the validity of the sanctions order is not before us and that order remains 'null and void' " and further acknowledges that "our review is thus limited to the remaining issues in the discovery order." But despite those acknowledgments, the majority fails to address why *this appeal*—an appeal now premised *only* on the discovery order and *not* the sanctions order—is worthy of this Court's attention notwithstanding our general rule that interlocutory orders, including orders compelling discovery, are "not immediately appealable." *Sharpe v. Worland*, 351 N.C. 159, 163 (1999); *see also Mack v. Moore*, 91 N.C. App.

478, 480 (1988) (holding that a discovery order was not immediately appealable due to lack of enforcement sanctions).

By signaling to future litigants that our courts will entertain more fragmented litigation, this Court's decision today (with the tolerance it signals for piecemeal discovery appeals) throws open wide the doors for more delays in the administration of justice, made in both good and bad faith, and the other harms associated with litigating interlocutory appeals. Dilatory tactics will become an even more pervasive norm than they currently are, reminding us of the truth in the adage that justice delayed is justice denied.

## C. The Advisory Nature of the Majority Opinion

The majority accurately frames that our review is limited to certain issues with the discovery order, but Ms. Sessoms is also correct that defendants "seek[ ] nothing more than an advisory opinion on a vacated sanctions order." We should not grant discretionary review or proceed with advisory opinions when it becomes clear that our ruling would be advisory in nature.

This Court has stated that "[t]he courts have no jurisdiction to determine matters purely speculative, enter anticipatory judgments . . . deal with theoretical problems, give advisory opinions . . . adjudicate academic matters, provide for contingencies which may hereafter arise, or give abstract opinions." *Little v. Wachovia Bank & Tr. Co.*, 252 N.C. 229, 243 (1960), *overruled on other grounds by Citizens Nat'l Bank v. Grandfather Home for Children, Inc.*, 280 N.C. 354 (1972); *see*

*also Wise v. Harrington Grove Cmty. Ass'n*, 357 N.C. 396, 408 (2003) (stating that "[i]t is no part of the function of the courts to issue advisory opinions"). Where this Court has occasionally reviewed issues that, although not live, are likely to persist on remand, those decisions come almost entirely in the context of class certification cases. *See, e.g., Empire Contractors, Inc. v. Town of Apex*, 388 N.C. 552, 560 (2025); *Jackson v. Home Depot U.S.A., Inc.*, 388 N.C. 109, 119 (2025); *Surgeon v. TKO Shelby, LLC*, 385 N.C. 772, 773 (2024).

Ms. Sessoms asserts that, because the sanctions order was vacated by the Court of Appeals, many of the questions defendants wanted resolved by this Court were focused on the crafting of the sanctions order on remand, thus, not "drawn into focus by these proceedings," given that only the discovery order is before us now. *See Wise*, 357 N.C. at 408. She is correct. For example, regarding spoliation, in defendants' section of their brief entitled "Trial courts should not sanction parties for alleged spoliation without record support," defendants relitigate the issue of whether their submitted affidavits of those with knowledge of the companies' document retention policies—i.e., efforts taken after the discovery order but before the sanctions order, which the trial court seemingly did not find sufficiently explanatory or credible—excused their noncompliance with the document log requirement. Thus, defendants sought to relitigate an issue for an entirely advisory opinion from this Court, giving defendants another bite at the apple when it comes to avoiding the consequences of their spoliation. To its credit, the majority does not engage with

defendants' arguments about the document retention policies and spoliation—properly so. But the fact that merits review in this matter invites those kinds of attempts only confirms why this Court previously employed a careful rule to avoid interlocutory, advisory opinions in discovery disputes because otherwise we will see endless acceptances of that invitation.

## II. The legal errors identified by the majority do not require vacatur of the entire discovery order.

While I agree with the majority that there were some misinterpretations of the rules by the trial court, I disagree that those errors are ones so harmful as to require the discovery order to be vacated. It is also worth emphasizing the nature of interlocutory appeals and issues: discovery disputes can be appealed after trial, too. Defendants would not have been precluded from raising these errors after trial and arguing error and prejudice at the procedurally proper time. *Sharpe*, 351 N.C. at 164 ("[T]he general rule [is] that interlocutory discovery orders are not ordinarily appealable prior to entry of a final judgment.").

### A. Defendants waived their objections by opening the door during the depositions, thus the identified errors were not harmful under the circumstances of this case.

The trial court did commit error with respect to the number of days defendants had to submit objections to the Rule 30(b)(5) requests for production and as to whether a deponent must obtain a protective order to preserve objections to Rule 30(b)(6) deposition topics. These errors, though, do not justify vacatur of the discovery order, particularly given the Court of Appeals' ruling on the translation

-43-

issue and vacatur of the sanctions order. Thus, I respectfully dissent from the majority's conclusion that those errors by the trial court "together justify vacating the order" where the trial court overruled defendants' objections and ordered full and complete supplementation. I would instead hold that, based on the questions asked by defense counsel during the 30(b)(6) depositions and the testimony elicited from defendants' designee witnesses, defendants had, in effect, waived the protective order issue, at least insofar as it encompassed the objections they had to the Rule 30(b)(5) requests for production and the Rule 30(b)(6) deposition topics which covered the same subjects.[4] Thus, because these objections were waived, the trial court's ultimate conclusions about defendants' non-compliance with the discovery order are legally sound, and the errors identified by the majority do not require the discovery order to be vacated. *State v. Williams*, 361 N.C. 78, 80 (2006) ("To establish that a trial court's exercise of discretion is reversible error, a defendant must show harmful prejudice as well as clear abuse of discretion." (cleaned up)).

Consider Topic/Request No. 12—Ms. Sessoms requested "[a]ll safety standards, guidelines, procedures, policies, regulations, and rules related to the design, manufacture, production, advertising, distribution, sale, and supply of the 2013 Toyota Scion that is the subject of this litigation." Defendants responded with objections to Request No. 12 and referenced previously produced documents.

---

[4] I do not think the testimony elicited in the 30(b)(6) depositions acted to waive objections to the timeframe in which defendants had to produce responsive documents, but I do not see that error as one significantly weighty enough to justify this interlocutory appeal.

Ultimately, defendants sought to narrow the scope of what the witness would be able to testify about and what the defendants would produce, with blanket language objecting that the request for production and deposition topic were "overly broad, unduly burdensome," and "ask[ ] for information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence." Notably, Ms. Sessoms stated in her first motion to compel that defendants did not produce any documents in response to the requests for production contained in the Notice of Deposition. During the deposition of Subaru's designee, the designee was questioned about various safety standards, leading to the following exchanges between Ms. Sessoms's counsel and defendants' designee:

> Q: . . . [Y]our lawyer had questioned you and you had answered regarding testing to Toyota specifications. Do you remember that?
>
> A. Yes.
>
> Q. Was testing to Toyota specifications performed for the—for this FR-S?
>
> A. Yes.
>
> Q. Please identify where on Exhibit 3 it was produced.
>
> . . . .
>
> A. I thought it was in here, but I'm sorry, it looks like it is not among the documents that were produced in this litigation.
>
> Q. Did you review that testing in preparation for your deposition today?
> .

> A. I did not see it directly, but I do know that there is a slight differences—or difference between the Toyota crash evaluation standard and Subaru's crash evaluation standard.
>
> Q. Okay. Was Toyota's—can you please point out on Exhibit 3 where Toyota's crash evaluation standard was produced?
>
> A. I don't think it was among the documents that were produced.

This occurred multiple times during the Subaru deposition, where Ms. Sessoms's counsel asked for more information from the designee and with the designee elaborating and explaining that the relevant documents had not been produced.[5]

Likewise, this also occurred during the deposition of Toyota's designee. Regarding Topic/Request No. 15 pertaining to similar customer complaints and legal claims, Ms. Sessoms's counsel asked the designee about a similar lawsuit and the designee mentioned that a preliminary inspection was performed in that matter by a Toyota engineer. The designee further mentioned that the inspection report was "more than likely" still with Toyota, prompting Ms. Sessoms's counsel to ask defendant Toyota to supplement its production. Defendants' trend of failing to produce or supplement was consistent, even regarding Topic/Request Nos. 1 and 2,

---

[5] The transcripts further reflect that the Subaru designee also brought up relevant documents (that had not been produced) pertaining to Subaru's internal testing standards, Insurance Institute for Highway Safety (IIHHS) test standards, New Car Assessment Program (NCAP) test standards, and CATIA design files. This list is not exhaustive—it just illustrates that the door was not just cracked ajar once, inadvertently. The door was swung wide open, with obvious intent, and thus the waiver was broad.

requesting information about the Sessoms incident and investigation. When asked by Ms. Sessoms's counsel how the designee prepared for the deposition, the designee mentioned that Toyota's counsel had provided some photographs to him to refresh his recollection and Ms. Sessoms's counsel noted that the referenced photographs were ones "that we don't have."

Thus, Ms. Sessoms's counsel's questions to the designees regarding testing and other topics and the designees' proffered answers effectively waived the objections to the scope of the deposition topics and requests for production. And because of that waiver, any determination of whether the trial court erred by concluding that the filing of a protective order was necessary to preserve defendants' objections to the scope of the topics and document requests was not outcome determinative. Further, the manner in which defendants broadly waived their objections also signals the likely weakness[6] of their objections to the scope in the first place—a party may not disclaim relevance of access to documents or information in discovery and then refer to such non-disclosed documents or information to affirmatively make their case. *See* N.C.G.S. § 1A-1, Rule 26(b)(1) (2025) (stating that "parties may obtain discovery

---

[6] The concurrence decries the "breadth of plaintiff's discovery" as the cause for this Court's intervention, but this aside will only pour gasoline on the fire that will be future interlocutory discovery disputes. As an appellate court, it is not our job to issue advisory thoughts on the breadth of one party's discovery requests. To the extent the majority identified reversible error by the trial court, it did not presume that the plaintiff's requests were overbroad or put its finger on the scale to dictate how the trial court should proceed on remand. While I disagree with the vacatur, the majority appropriately refrains from such unhelpful commentary.

regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action"). Ultimately, then, because the objections were waived by conduct in the 30(b)(6) depositions, the trial court's errors pertaining to the deadline for objections or need for a protective order were not prejudicial and do not justify the discovery order being vacated.

## B. Defendants did not comply with the trial court's discovery order or the Rules of Civil Procedure.

In opening the door to further testimony and discovery where defendants objected to the scope, and thereby waiving objections, the above exchanges also show that defendants did not comply with the trial court's discovery order or the Rules of Civil Procedure because defendants failed to produce requested documents and answer questions about designated topics, in both written discovery and in deposition.

The record before the trial court establishes that the trial court did not abuse its discretion in concluding that defendants did not meet their discovery obligations. The defendants failed to produce any documents in response to the Rule 30(b)(5) requests despite having relevant documents in their possession as evidenced by the designees' testimony. Additionally, as explained above, the designees referenced documents during the depositions that had not been produced thus far in discovery despite Ms. Sessoms's Rule 30(b)(5) requests for production clearly anticipating the documents mentioned by the designees. Finally, it is worth emphasizing the document retention policies that defendants proffered to the trial court to explain

why they had not produced the requested documents. Beyond finding the policies unpersuasive, the trial court actually found that defendants had failed to show that they even complied with their own policies and concluded that defendants had "with[eld] or potential[ly] destr[oyed] relevant and discoverable documents," thereby prejudicing Ms. Sessoms. In summing up the defendants' actions and inactions in discovery, the trial court viewed its imposition of sanctions as "just and appropriate" especially when considering the defendants' conduct and their "sophistication."

Our discovery rules are focused "on expeditious handling of factual information before trial so that the critical issues may be presented at trial unencumbered by unnecessary or specious issues and so that evidence at trial may flow smoothly and objections and other interruptions be minimized." *Willis*, 291 N.C. at 34. In the face of the ample evidence establishing defendants' noncompliance with the trial court's discovery order and the Rules of Civil Procedure, our departure from our longstanding policy of not entertaining piecemeal interlocutory appeals, particularly on discovery issues, highlights the entire point. Because of defendants' noncompliance, Ms. Sessoms's day in court will now be years delayed. That is not justice.